UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

_____

| | |
|---|---|
| HARRY'S CHOCOLATE SHOP<br>INCORPORATED | ) <br> ) <br> ) |
| Plaintiff, | ) Civil Action No. 4:17-cv-00057 <br> ) |
| v. | ) <br> ) DEMAND FOR JURY TRIAL |
| GOLDDEN CORPORATION<br>GARY E. EDMONDSON | ) <br> ) <br> ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Harry's Chocolate Shop Incorporated ("HCSI"), complains of its now terminated licensees Goldden Corporation and Gary Edmondson (collectively "Defendants") and alleges as follows:

## PARTIES

1.      Plaintiff, HCSI is a corporation organized under the laws of the State of Indiana and has a principal place of business at 329 W. State Street, West Lafayette, Indiana 47906.

2.      On information and belief, Defendant Goldden Corporation (hereinafter "Goldden") is a corporation organized under the laws of the State of Indiana, and has a registered office address of 3601 Sagamore Parkway North, Suite E, Lafayette, Indiana 47904.

3.      On information and belief, Defendant Gary E. Edmondson (hereinafter "Mr. Edmondson") is an individual residing at 702 Terrace Bay Court, Monticello, Indiana 47960.

4.      On information and belief, Mr. Edmondson is also the President of Goldden.

1

## JURISDICTION AND VENUE

5.      This case arises under the trademark laws of the United States, namely Section 39

of the Trademark Act of 1946, 15 U.S.C. §§ 1121 *et. seq.* (the "Lanham Act").

6.      This Court has jurisdiction of this Action pursuant to 28 U.S.C. §§ 1331, 1367

and 1338(a).

7.      Venue in this district is proper pursuant to the provisions of 28 U.S.C. § 1391.

8.      This Court has personal jurisdiction over Defendant Golden because it resides in

this judicial district and regularly does business here through its retail store(s) located in and

around West Lafayette, Indiana, including its retail store located at 135 South Chauncey Ave.,

West Lafayette, Indiana 47906.  On information and belief, the Court also has personal

jurisdiction over Defendant Mr. Edmondson because he also resides in this judicial district.


## BACKGROUND FACTS

### *The History of Harry's Chocolate Shop*

9.      Harry's Chocolate Shop was founded in 1919 as the first and only soda fountain

near Purdue University.  In addition to soda, Harry's Chocolate Shop served a modest number of

lunch items.

10.      Following the end of prohibition in 1933, Harry's Chocolate Shop acquired a

liquor license and began operations as a restaurant and bar.

11.      Over the years, Harry's Chocolate Shop has become a favorite social gathering

place, especially among the students and alumni of Purdue University.

12.      Harry's Chocolate Shop is currently owned by HCSI.

13.      In 2015, Harry's Chocolate Shop was at the top of the list of the "29 Best College Bars in America" published by the popular website www.buzzfeed.com.

14.      The traditions of and memories made at Harry's Chocolate Shop have travelled outside of West Lafayette with Purdue University's alumni, and Harry's Chocolate Shop is now well-known thought the United States and around the world.

### *Harry's Chocolate Shop's Trademarks*

15.      Since at least 1919 and continuously to date, HCSI and its predecessors, coined, adopted and used in interstate commerce the mark HARRY'S CHOCOLATE SHOP in connection with its business.

16.      HCSI has also coined, adopted and used in interstate commerce the Harry's Chocolate Shop logo, the GO UGLY EARLY mark, the DRINK 'EM PRETTY mark, the HOME OF THE "GREAT INDOORSMAN" mark, and the DRINK 'EM CUTE mark (collectively with the HARRY'S CHOLOCATE SHOP mark and design "the HCSI Marks").

17.      Since at least 1997, and continuously to date, HCSI has used in interstate commerce the HCSI Marks in connection with its restaurant and bar services and in connection with its sales of clothing, including t-shirts, hats and sweatshirts.

18.      HCSI has used the HCSI Marks continuously, notoriously and extensively with respect to and in association with its goods and services and further has marked its materials with the appropriate "$^{TM}$" or "®" legends.

19.      HCSI has expended a substantial amount of money and effort in advertising and promoting the HCSI Marks.  The HCSI Marks are each well-known and consumers have come to know, rely upon, and recognize each of the HCSI Marks as identifying HCSI's products and services.  As a result of HCSI's substantial promotional, advertising, publicity, and public

relations activities, the HCSI Mark have acquired substantial goodwill and are valuable commercial assets.

20.       The HCSI Marks are each inherently distinctive, serving to identify and indicate the source of HCSI's goods and services to the consuming public, and to distinguish HCSI's goods and services from those of others.

21.       HCSI is the owner of United States Registration No. 2,157,958 issued May 19, 1998 for the mark HARRY'S CHOCOLATE SHOP® for articles of clothing, namely, hats, T-shirts and sweatshirts (in class 25) and restaurant and bar services (in class 42) (the "'958 Registration"). A true and accurate copy of the '958 Registration is attached as Exhibit A.

22.       HCSI is the owner of United States Registration No. 2,721,593 issued June 3, 2003 for the mark GO UGLY EARLY® for restaurant and bar services (in class 43) (the "'593 Registration"). A true and accurate copy of the '593 Registration is attached as Exhibit B.

23.       HCSI is also the owner of United States Registration No. 2,675,741 issued January 21, 2003 for the mark GO UGLY EARLY® for articles of clothing, namely, hats, T-shirts and sweatshirts (in class 25) (the "'741 Registration"). A true and accurate copy of the '741 Registration is attached as Exhibit C.

24.       HCSI is the owner of United States Registration No. 2,300,470 issued December 14, 1999 for the mark DRINK 'EM PRETTY® for articles of clothing, namely, hats, T-shirts and sweatshirts (in class 25) and restaurant and bar services (in class 42) (the "'470 Registration"). A true and accurate copy of the '470 Registration is attached as Exhibit D.

25.       HCSI is the owner of United States Registration No. 3,254,418 issued June 26, 2007 for the mark HOME OF "THE GREAT INDOORSMAN"® for articles of clothing, namely, hats, T-shirts and sweatshirts (in class 25) and restaurant and bar services (in class 43)

4

(the "'418 Registration").  A true and accurate copy of the '418 Registration is attached as

Exhibit E.

26.        HCSI is the owner of Indiana State Trademark Registration No. 2010-0021 issued

January 8, 2010 for the mark DRINK 'EM CUTE$^{TM}$ for clothing (the "'021 State Registration").

A true and accurate copy of the '021 State Registration is attached as Exhibit F.

27.        Harry's Chocolate Shop presently provides bar and restaurant services from its

bar and restaurant located at 329 W. State St, West Lafayette, Indiana 47906 and sells clothing,

including T-shirts, hats, sweat-shirts and the like both at its bar and restaurant as well as through

an authorized licensee's retail store and online website(s).  All of these sales occur under the

above identified trademarks and trademark registrations (collectively the "Asserted

Trademarks").

### *Defendants' Relevant History*

28.        On information and belief, Mr. Edmondson is a graduate of Purdue University.

29.        On information and belief, Mr. Edmondson founded Goldden in 1979 with the

intention of offering Purdue University branded and/or related merchandise to the students and

alumni of the university.

30.        On information and belief, Goldden also does business or has done business under

the assumed names "University Spirit", "University Spirit-East" and "University Spirit-West".

31.        Defendants currently operate a retail location under the name "University Spirit"

which is located at 135 S. Chauncey Ave #1H, West Lafayette, IN 47906 (the "Chauncey Hill

Store").

32.        The Chauncey Hill Store is located approximately one or two blocks from Harry's

Chocolate Shop.

33.     Defendants previously operated several additional retail locations under the name "University Spirit" or variations thereof.  On information and belief, those additional retail locations have all now closed.

### *HCSI's License to Defendants*

34.     In 1995 Mr. Edmondson was a family friend of Herschel and Mary Cook, the owners of HCSI.

35.     In 1995, HCSI and the Defendants entered into a non-exclusive license agreement which enabled Defendants to produce and sell apparel and other merchandise bearing the HCSI Marks (the "License Agreement").

36.     The License Agreement was for successive one-year periods and would renew automatically absent the objection of either party.

37.     The License Agreement required that the Defendants pay 30% of their gross sales of items bearing the HCSI Marks to HCSI as a royalty.

38.     The License Agreement provided HCSI with approval of all merchandise bearing any of the HCSI Marks before being sold by Defendants.

39.     The License Agreement was an oral agreement and was not reduced to writing.

40.     Between 1996 and 2006, Defendants performed under the License Agreement and paid HCSI between $45,000 and $80,000 per year.

41.     Beginning in 2007, Defendants payments to HCSI became somewhat erratic.

42.     By mid-2012, Defendants had stopped making royalty payments altogether.

43.     As a result of its missed payments, on October 19, 2012 Defendants executed a written promissory note acknowledging the total unpaid royalties to date of $163,425.65.  A copy of this document is attached as Exhibit G.

44.       Soon thereafter, Defendants resumed making royalty payments to HCSI.

45.       The last payment Defendants made to HCSI was made in September 2013.

46.       Defendants have not made another royalty payment to HCSI since September 2013.

47.       On information and belief, the total value of unpaid royalties currently owed to HCSI by Defendants is at least $250,000.

### *HCSI's Termination of the License Agreement*

48.       After repeated efforts to bring Defendants back into compliance, in late 2016, HCSI received a subpoena in a state court collection action against Goldden.

49.       As a result of this subpoena, HCSI learned of the serious financial condition that Defendants had fallen upon.

50.       On January 9, 2017, HCSI terminated the License Agreement and demanded that Defendants immediately cease all sales of merchandise bearing the HCSI Marks.  A copy of this letter is attached as Exhibit H.

51.        Defendants responded that same day via e-mail and requested "a meeting to discuss payments and going forward."  Defendants did not address the cessation of sales of merchandise bearing the HCSI Marks.  A copy of this e-mail is attached as Exhibit I.

52.       After denying Defendants' request for a meeting, on February 15, 2017 HCSI sent a second letter to Defendants reiterating its demands that Defendants immediately cease all sales of merchandise bearing the HCSI Marks.  A copy of this letter is attached as Exhibit J.

53.       On February 16, 2017, Defendants responded via e-mail promising to provide sales reports.  Defendants did not address the cessation of sales of merchandise bearing the HCSI Marks.  A copy of this e-mail is attached as Exhibit K.

54.     On February 22, 2017, Mr. Phil Dennis, a gentleman claiming to be a representative of Defendants, reached out to counsel for HCSI seeking to make financial arrangements to pay-off the outstanding royalties and continue the license to the HCSI Marks. Due to its indefiniteness, this request was denied.  Mr. Dennis did not address the cessation of sales of merchandise bearing the HCSI Marks.

55.     On February 22, 2017, Defendants provided a copy of their sales reports. Defendants did not address the cessation of sales of merchandise bearing the HCSI Marks.  A copy of this e-mail is attached as Exhibit L.

56.     In a February 24, 2017 e-mail to HCSI, Mr. Edmondson acknowledged that Defendant had make only "sporadic payments" and stated that he "never once thought that [he] would not pay [HCSI] all of the royalties due over time and still hope to do that."  A copy of this e-mail is attached as Exhibit M.

57.     On March 2, 2017 counsel for HCSI sent a final letter to Defendants maintaining the termination of the License Agreement and demanding that Defendants cease all sales of merchandise bearing the HCSI Marks.  A copy of this letter is attached as Exhibit N.

58.     On March 9, 2017 Mr. Edmondson responded via e-mail requesting to wind up the relationship under the License Agreement by the end of the school year.  A copy of this e-mail is attached as Exhibit O.  HCSI denied this request.

59.     On March 10, 2017 Mr. Edmondson responded via e-mail requesting to continue the prior relationship under the License Agreement.  A copy of this e-mail is attached as Exhibit P.  HCSI denied this request.

## BREACH OF CONTRACT

60.     HCSI incorporates by reference the averments contained in paragraphs 1 through 59.

61.     Defendants have confirmed and acknowledged in writing a sizeable portion of their outstanding royalty obligation to HCSI (attached as Exhibit G).

62.     Defendants have confirmed and acknowledged in writing a second sizeable portion of their outstanding royalty obligation to HCSI in their e-mail dated February 22, 2017 (attached as Exhibit L).

63.     Since at least September of 2013, Defendants have failed to make the periodic royalty payments due under the License Agreement.

64.     Defendants have, therefore, breached the License Agreement.

65.     HCSI has suffered damages including, among other things, and without limitation, loss of royalties.

## TRADEMARK INFRINGEMENT AND COUNTERFEITING

66.     HCSI incorporates by reference the averments contained in paragraphs 1 through 65.

67.     Defendants had and currently have knowledge of HCSI Marks as they have produced and sold merchandise bearing the HCSI Marks under the License Agreement for the past twenty years.

68.     On information and belief, following the termination of the License Agreement, Defendants  have purchased, manufactured, offered to sell, sold and continue to purchase,

manufacture, offer to sell and sell merchandise bearing one or more of the HCSI Marks for sale

(the "Counterfeit Goods").

69.        Attached as Exhibit Q are two photographs taken on February 7, 2017 of

Defendants' Chauncey Hill Store showing the Counterfeit Goods for sale.

70.        Attached as Exhibit R is a representative screenshot taken of Defendants' current

webpage (www.purduegear.com) which shows the Counterfeit Goods bearing the HCSI marks

currently for sale.

71.        Defendants' sales of merchandise bearing the HCSI Marks is likely to cause

confusion or mistake or to deceive consumers into believing that Defendants' products are

sponsored, licensed or authorized by, or affiliated, connected or otherwise associated with HCSI.

72.        The acts of Defendants' complained of herein are likely to cause confusion,

mistake, or deception as to origin, sponsorship or approval and therefore constitute trademark

infringement  and counterfeiting in violation of Section 32 and 43(a) of the Lanham Act, 15

U.S.C. § 1114 *et seq*. and the common law.


## FALSE AND DECEPTIVE LABELING AND UNFAIR COMPETITION

73.        HCSI incorporates by reference the averments contained in paragraphs 1 through

72.

74.        Defendants' actions constitute false and deceptive labeling and unfair competition

in violation of the Lanham Act 15 U.S.C. §1125 and the common law.

## RELIEF

**WHEREFORE**, HCSI prays for judgment as follows:

A.      An order preliminarily restraining Defendants or any subsidiaries, employees, agents or servants thereof, from further acts of infringement of the Asserted Trademarks.

B.      An award to Plaintiff and against Defendants for all unpaid royalties under the license agreement.

C.      A judgment that the use of the HCSI Marks in Defendants' commercial advertising, marketing, and/or promotion and sales in the Unites States constitutes and creates a likelihood of confusion, mistake, or deception among relevant consumers and therefore infringes the Asserted Trademarks.

D.      A judgment that Defendants have engaged in counterfeiting with respect to the Asserted Trademarks.

E.      An order permanently restraining Defendants or any subsidiaries, employees, agents or servants thereof, from further acts of infringement of the Asserted Trademarks.

F.      An order permanently restraining Defendants or any subsidiaries, employees, agents or servants thereof, from engaging in any form of misleading advertising of products or services bearing or resembling the Asserted Trademarks which have caused actual confusion, mistake or deception of the public or the likelihood thereof as being similar thereto or therewith.

G.      An order that all infringing items in the possession of, or subject to control by Defendants or any employees, agents or servants thereof, infringing on the Asserted Trademarks, and all labels, signs, prints, packages, wrappers, receptacles, and advertisements be delivered up and destroyed or altered to eliminate any possibility any further infringement.

H.     An award to Plaintiff of treble Defendants' profits under 15 U.S.C. § 1117(a) and (b).

I.     An award to Plaintiff of statutory damages for counterfeiting up to $2,000,000 per mark, as the Court considers just, pursuant to 15 U.S.C. § 1117(c).

J.     An order declaring that this is an exceptional case pursuant to 15 U.S.C. 1117 as a result of Defendants' knowing and willful infringement of the HCSI Marks, and awarding Plaintiff their attorneys' fees incurred in bringing this action.

K.     An order that the amounts awarded to Plaintiff as damages or profits be increased by the maximum amount allowed under 35 U.S.C. §284 and 15 U.S.C. 1117.

L.     An award of Plaintiff's damages, statutory damages, costs, attorney's fees and/or expenses associated with this action and also including Defendants' wrongful profits from or associated with its patent and or trademark infringements and other violations of Plaintiff's rights.

M.     An order granting all other relief found necessary, just and proper under the circumstances, including monetary damages to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff request a jury trial for all issues so triable.

Respectfully submitted,


s/William A. McKenna
William A. McKenna
Woodard, Emhardt, Moriarty,
  McNett & Henry LLP
111 Monument Circle, Suite 3700
Indianapolis, Indiana  46204-513
Phone:  317-634-3456
Fax:  317-637-7561
Email: wmckenna@uspatent.com

***Attorneys for Plaintiff***
***Harry's Chocolate Shop Incorporated***

#1412789

13